**EASTERN CARIBBEAN CORPORATION, a domestic corporation, ASTA M. FLEMING, GEORGE FREDERICK FLEMING and GEORGE BALFOUR FLEMING, Plaintiffs**

**v.**

**THE WEST INDIAN COMPANY, LTD., Defendant**

Civil No. 151/1978

District Court of the Virgin Islands

Div. of St. Thomas and St. John

October 29, 1979

415

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

JEFFREY L. RESNICK, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

JOHN B. NICHOLS, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

GEORGE H. HUBSCHMAN, ESQ. (IRELAND & HUBSCHMAN), Charlotte Amalie, St. Thomas, V.I., *for defendant*

YOUNG, *District Judge*

MEMORANDUM OPINION WITH ORDER ATTACHED

This is an action by a mortgagor for breach of the mortgage contract. The defendant has moved for summary judgment. Inasmuch as there are material issues of fact in dispute, summary judgment will be denied.

### I

In December 1973, Eastern Caribbean Corporation and

its officers and principal shareholders (hereinafter "Caribbean"), the plaintiffs, and the West Indian Company, Ltd. (hereinafter "West Indian"), the defendant, renegotiated the financial provisions of the sale agreement of the Maison Danoise gift shop in St. Thomas, which Caribbean had purchased from West Indian in 1968. The renegotiation resulted in two documents, to wit, a Mortgage Note and a Second Collateral Mortgage. The latter document, dated December 12, 1973, is in the principal amount of $425,000 and contains the following provision:

This mortgage is a collateral mortgage, being subject only to the first priority mortgage executed in favor of the Chase Manhattan Bank, Virgin Islands, United States of America, in the sum of TWO HUNDRED THIRTY TWO THOUSAND DOLLARS ($232,000.00), dated April 1, 1969. . . . The Mortgagor is presently negotiating a first mortgage on the demised premises herein with the Virgin Islands National Bank in St. Thomas, U.S. Virgin Islands, in the amount of TWO HUNDRED EIGHTY THOUSAND DOLLARS ($280,000.00) to replace the existing Chase Manhattan Bank First Mortgage and the Mortgagee agrees that this collateral mortgage shall be subject to said Virgin Islands National Bank mortgage when it is executed between Eastern Caribbean Corporation and the Virgin Islands National Bank.

Caribbean had secured, in May 1972, a loan commitment from the Virgin Islands National Bank (hereinafter "VINB"), in which VINB approved a $280,000 permanent mortgage and a $76,000 term loan, both loans to be secured by the personal guarantees of the individual plaintiffs and by the Maison Danoise premises. Apparently, this loan commitment was originally made contingent on the condition precedent of priority being given to both of the promised loans relative to the mortgage held by West Indian. However, in March 1974, VINB agreed to require that West Indian subordinate its mortgage only to the $280,000 permanent mortgage as a condition precedent to making the two loans, with the $76,000 loan to be secured

by the inventory and accounts receivable of the gift shop. The VINB loan commitment was to expire on July 1, 1974, so it was essential that West Indian execute the subordination and that Caribbean deliver it to VINB before that date for Caribbean to obtain the VINB loans.

Beginning with the payments due in April 1974, Caribbean failed to make its full payments and became in default. However, it continued to make irregular payments of one-half the amount of each month's payments, so that by the first of June, the June, May and one-half of the April payments were due.

On June 4, 1974, Caribbean sent West Indian a letter accompanied by a subordination agreement which West Indian eventually agreed conformed to the provision in the mortgage contract. West Indian did not respond to the letter until August 15, 1974, at which time it stated that it would execute the subordination agreement provided that Caribbean's arrears in payment were brought up to date. Caribbean, in response, asserted that West Indian's duty to execute the subordination agreement was not contingent on whether Caribbean was current in its payments. On August 29, 1974, West Indian sent a letter clarifying its position, in which it stated that its intention was to assure that the arrears would be paid up out of the proceeds of the VINB loan. In the delay of two and one-half months before West Indian responded to Caribbean's letter and subordination agreement of June 4, the VINB loan commitment expired on July 1.

Caribbean alleges in its complaint that as a consequence of West Indian's failure to execute the subordination agreement, Caribbean's mortgages were foreclosed, resulting in bankruptcy of the plaintiff corporation and of two of the individual plaintiffs, who were guarantors of some of the mortgage obligations.

## II

■ West Indian, in support of its motion for summary judgment, relies on Restatement of Contracts, Sec. 270 (1932), as providing that its duty to fulfill its promise to subordinate its mortgage was contingent on completion of Caribbean's performance because that performance extended over a period of time. West Indian's reliance on this section is misplaced. The section deals with implying a condition of complete performance by a party whose performance must extend over a period of time before the promise of the other party must be performed, "if the contract does not indicate the contrary by fixing dates or otherwise". Here it is apparent that it was intended by the parties that West Indian would become obligated to subordinate its mortgage before Caribbean had made all its payments, or the subordination would be of no use.

■ Caribbean, in its opposition to the motion, raises two arguments to show that there are issues of material fact. The first appears in the affidavit of Caribbean's attorney, wherein it is argued that at the time the original subordination agreement, which did not comply with the parties' agreement, was presented to West Indian in March 1974, West Indian "could have deleted and initialled the $76,000.00 amount, executed the document, and given the same back" to Caribbean. At the time this nonconforming subordination agreement was received by West Indian, Caribbean was apparently not in default. The question would then be whether West Indian had the contractual duty to alter the nonconforming agreement to meet the requirements of their mortgage contract with Caribbean. On this question the contract terms are vague, providing only that West Indian agreed that its mortgage "shall be subject to said Virgin Islands National Bank mortgage when it is executed". It has been held that where contract terms

419

are vague and the parties' intent does not appear from the documents supporting the motion for summary judgment, the parties' intent is a question of fact precluding summary judgment. Lucie v. Kleen-Leen, Inc., 499 F.2d 220 (7th Cir. 1974); Ethyl Corporation v. Hercules Powder Company, 232 F.Supp. 453, 459 (D. Del. 1964).

██ West Indian's failure to modify the nonconforming agreement might also be determined by a trier of fact to be a breach of the implied condition of good faith and fair dealing. A party's good faith is a question of fact. B. H. Dexon Co. v. United States, 189 F.Supp. 146, 150 (E.D. Pa. 1960).

Caribbean's second argument in opposition to the motion is that its default in payments was not a material breach of the mortgage contract such as would justify West Indian's refusal to perform its obligation to subordinate its mortgage. Restatement of Contracts, Sec. 276 (1932), relied on by Caribbean, sets forth the rules for determining the materiality of a delay in performance. It states, in relevant part:

In determining the materiality of delay in performance, the following rules are applicable:

(a) Unless the nature of a contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promisor to perform his promise on the day stated in the promise does not discharge the duty of the other party.

(b) In mercantile contracts performance at the time agreed upon is important, and if the delay of one party is considerable having reference to the nature of the transaction and the seriousness of the consequences, and is not justified by the conduct of the other party, the duty of the latter is discharged.

(c) If delay of one party in rendering a promised performance occurs before any part of his promise has been rendered less delay discharges the duty of the other party than where there has been part performance of that promise.

■ Because West Indian, as mortgagee, had a secured obligation, the delay in payment probably did not cause great injury to it. And Caribbean had apparently paid in excess of $100,000.00 per year for five (5) years before they went in default, which is substantial part performance of their total obligation. In addition, since the mortgage was renegotiated at a time of apparent financial difficulty for Caribbean, the parties may not have intended that default would void West Indian's obligation to subordinate its mortgage, since doing so would improve the Caribbean's financial stability.

■■ These reasons appear to be sufficient to prevent plaintiffs' default from being held to be a material breach as a matter of law. In general, questions of materiality are questions of fact. In Consolidated Lab, Inc. v. Shandon Scientific Co., 413 F.2d 208, 213 (7th Cir. 1969), the Court reversed a summary judgment where the trial court had held that plaintiff's prior breach had justified the defendant's termination of the contract. The Court of Appeals stated that there was a material factual issue as to whether the plaintiff was in "substantial breach of contract". And the question of whether changes made by an offeree of an offeror's proposal materially altered the proposed terms was held to be a question of fact precluding summary judgment in Ebasco Services, Inc. v. Pennsylvania Power and Light Co., 402 F.Supp. 421, 442 (E.D. Penn. 1975). Under the quoted provisions of the Restatement of Contracts, applicable here pursuant to 14 V.I.C. § 4, the defendant's refusal to execute the subordination agreement would be justified only if plaintiff's default was a material breach of the parties' contract. Because the materiality of the breach is a question of fact, summary judgment is inappropriate.

■ Another argument, not raised by Caribbean, also supports denial of summary judgment. That is the question of whether West Indian's delay of nearly two and one-half months in responding to the letter and conforming subordination agreement sent by Caribbean on June 4 was a violation of defendant's obligation of good faith. Nothing discussed herein is intended to interpret the likelihood of success on the merits.

An order will issue denying defendant's motion for summary judgment.

### ORDER

For the reasons set forth in the Memorandum Opinion of even date, it is hereby

ORDERED

That the defendant's motion for summary judgment is hereby DENIED.